Case: 1:21-mj-00105
Assigned to: Judge Faruqui, Zia M.
Assign Date: 1/18/2021
Description: COMPLAINT W/ARREST WARRANT

## STATEMENT OF FACTS

On January 6, 2021, your affiant, Scott F. Brown, was on duty and performing my official duties as a Metropolitan Police Department Detective. Specifically, I am assigned to the Narcotics and Special Investigations Division, and detailed to the FBI's Safe Streets Task Force. Since January 6, 2021, your affiant has been tasked with investigating criminal activity in and around the Capitol grounds. The following facts come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies. This affidavit is intended to show merely that there is sufficient probable cause for the charges below. It does not set forth all of my knowledge, or the knowledge of others, about this matter.

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

A publically available video that I have reviewed shows a large group of individuals, including a white male who was wearing a blue-colored jacket and black sunglasses (Person 1), trying to forcefully and violently gain access to the U.S. Capitol building on January 6, 2021.[1] The video shows Person 1: entering the covered area leading to an entrance to the U.S. Capitol building; assisting with passing a clear ballistic shield away from the entrance to the U.S. Capitol building; possessing a black-colored handheld Taser, which was handed to him by an unknown man in a desert camouflage jacket and black hat with a white emblem on the front; activating the Taser multiple times, as evidenced by light flashes emanating from the Taser's tip; and pushing himself through the crowd of violent individuals towards the police line that was protecting the entrance to the U.S. Capitol building.  Figures One through Four show still images from the video.



Figure One



Figure Two

---

[1] The video is available at https://www.youtube.com/watch?v=cJOgGsC0G9U.



Figure Three



Figure Four

On or about January 10, 2021, the Federal Bureau of Investigation (FBI) created Be On the Lookout (BOLO) posters seeking information regarding individuals that had committed violent acts on or inside the grounds of the U.S. Capitol. Two of those BOLO posters appear below as Figures Five and Six. The Photographs labeled #81-AFO and #98-AFO depicted Person 1.





Figure Five                                Figure Six

These BOLOs were disseminated to various media outlets and posted on the FBI official website.

On January 14, 2021, the FBI received a call that members of the Metropolitan Police Department (MPD) were with an individual who had contacted police and wanted to turn himself in regarding a wanted poster that included a picture of him.  Special Agent James Mulvihill and I responded to the 800 block of Florida Avenue, Northeast, Washington, D.C., and were met by MPD Officers of the Fifth District and VITALI GOSSJANKOWSKI. GOSSJANKOWSKI was not handcuffed or under arrest.  With the assistance of MPD Officer Ulrich, from the Special Liaison Branch, GOSSJANKOWSKI was interviewed.  GOSSJANKOWSKI stated that someone had called him to inform him that they had seen him on FBI wanted posters.  GOSSJANKOWSKI said he never went inside of the building and that he went to the U.S. Capitol out of curiosity. GOSSJANKOWSKI admitted to possessing a Taser, but said he found it on the ground when he was walking up towards the U.S. Capitol.  GOSSJANKOWSKI stated that he left after he could not gain entrance to the U.S. Capitol and that he discarded the Taser in a trashcan outside the U.S. Capitol building.  GOSSJANKOWSKI stated that he had gone to the U.S. Capitol with a friend of his from Frederick, Maryland.  GOSSJANKOWSKI agreed to be photographed on January 14, 2021. Figure Seven shows how he appeared when he was interviewed. Notably, he was wearing what appeared to be the same blue jacket that Person 1 was wearing on January 6, 2021.



Figure Seven

During the January 14, 2021 interview, GOSSJANKOWSKI provided law enforcement with his Florida Identification Card, which confirmed that his name is VITALI GOSSJANKOWSKI.

On January 17, 2021, law enforcement interviewed GOSSJANKOWSKI for a second time. He reiterated what he said during the first interview. I showed him a snapshot of Officer Fanone being assaulted on January 6, 2021. Officer Fanone suffered a heart attack and was hospitalized as a result. Officer Fanone reported that he was Tased multiple times in the back of his neck when he was assaulted by rioters.  GOSSJANKOWSKI recognized Fanone in the snapshot and described him as the officer with tattoos on his neck. He said he did not use his Taser on Officer Fanone, but if he touched him, he touched his helmet and it was merely to help him. During the interview, GOSSJANKOWSKI admitted that he was the person in both BOLOs (see Figures Five and Six). He also stated that he took pictures and video when he was on the Capitol grounds, but that he either deleted them or they were lost when his phone died.

Based on the foregoing, your affiant submits that there is probable cause to believe that GOSSJANKOWSKI violated 18 U.S.C. § 1752(a)(1) and (2) and (b)(1)(A), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do so; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; and did so while using or carrying a dangerous weapon.  For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

Your affiant submits there is also probable cause to believe that GOSSJANKOWSKI violated 40 U.S.C. § 5104(e)(2)(D), which makes it a crime to willfully and knowingly utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that

building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress.

_____

DETECTIVE SCOTT BROWN
METROPOLITAN POLICE DEPARTMENT

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 18th day of January 2021.

2021.01.18
10:19:00
-05'00'

_____

ZIA M. FARUQUI

U.S. MAGISTRATE JUDGE